Wilkie v. Stanley, 2011 NCBC 11.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

JAMES E. WILKIE,

                Plaintiff,

v.

JEREMY L. STANLEY,

                Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 6257

**ORDER ON MOTIONS TO DISMISS**

{1}    THIS MATTER is before the Court on Defendant Jeremy Stanley's Motions to Dismiss Amended Complaint, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. After considering the submissions by counsel and hearing oral arguments, the motions are DENIED.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by James C. Adams for Plaintiff.*
>
> *Boydoh Law Group by J. Scott Hale for Defendant.*

Gale, Judge.

{2}    The motions now before the Court must be resolved at the intersection of Rules 12(b)(1) and 12(b)(6). Defendant introduces factual evidence beyond the Amended Complaint and challenges jurisdiction upon such evidence. The jurisdictional challenge rests on a merits assumption that Plaintiff has no injury in fact, and, therefore, no standing. Defendant offers affidavit evidence that any partnership that may have existed was at will and was terminated or dissolved as a matter of law, with no need for an accounting and no action for damages remaining because any income or asset of the partnership arose exclusively from client contracts that are terminable at will, so that any injury associated with future income from those contracts is speculative. The Court concludes that the proper standard of review of the jurisdictional issues dictates only that

the Amended Complaint brings forth facts, which if assumed true, are adequate to present a cognizable claim of recoverable injury.  Under this standard of review, the Court concludes it has jurisdiction.  Finding that it has jurisdiction, the Court concludes that each of the claims in the Amended Complaint withstand early dismissal under Rule 12(b)(6).[1]

## I.  Procedural History

{3}     This action was filed in Guilford County Superior Court on May 6, 2010, then designated a mandatory complex business case.  Defendant filed an initial motion to dismiss the Complaint, in response to which Plaintiff filed an Amended Complaint.  The Amended Complaint includes eight claims of relief: (1) breach of partnership agreement, (2) breach of joint venture, (3) breach of contract, (4) breach of fiduciary duty, (5) interference with business relations, (6) constructive trust, (7) constructive fraud, and (8) accounting.  Defendant renewed his Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss.  Defendant offers his own affidavit in support of his motions, urging that Plaintiff has no cognizable injury.  The motions were fully briefed and the Court heard oral argument.

## II. Facts

{4}     The facts presume the truth of Plaintiff's allegations.  Clearly, Defendant denies certain of these facts.

Plaintiff and Defendant are certified financial planners.  They worked together from 1997 until 2008.  In or about 2004, they affiliated with Linsco/Private Ledge Financial Services ("LPL"), a broker dealer.  In 2005, they joined Compass Financial Partners, LLC ("Compass"), while continuing their affiliation with LPL.

Wilkie and Stanley entered into an oral partnership and/or joint venture to provide investment and asset management services to certain members of the North Carolina Association of Nurse Anesthetists ("NCANA").  Pursuant to their agreement, while together they shared all expenses related to the NCANA program 50/50, shared all duties and responsibilities related to the program, and shared all commissions and other

---

[1] The Court's ruling on the Rule 12(b)(1) motion is not to be construed as an ultimate merits determination that would preclude a subsequent Rule 56 motion that tests the merits of the claims under the summary judgment standard.

revenues generated by the program participants 50/50. NCANA members desiring to use Wilkie's or Stanley's services would execute an agreement with the broker dealer designating either or both men as their investment advisors, but would be aware that fees would be shared. The parties executed an agreement with LPL confirming their 50/50 relationship with respect to NCANA clients. Through the NCANA program, Wilkie and Stanley obtained approximately fifty (50) clients. Wilkie's claim is that the agreement binds either Wilkie or Stanley to share revenues from any of these clients, irrespective of whether the client subsequently elects to have only one of them provide investment services. While a client's election to use neither of them may terminate revenue to be shared, so long as revenue is received by either of them, it must be shared.

In late 2008, Stanley left Compass and began his own business. He continued his association with LPL. While some of the 50 NCANA clients in place at this time maintained their program without change, Stanley began marketing efforts to NCANA clients without Wilkie's input or consideration and transitioned some NCANA clients to his sole account by having clients execute forms which provide that Stanley is the client's sole investment advisor. Wilkie alleges, on information and belief, that "Stanley obtained account representative agreements from various clients based upon misrepresentations about the content of the applications or about Wilkie's continued involvement with . . . NCANA and/or the particular client." (Am. Compl. ¶ 13.) Stanley refuses to share revenue received from the clients who made these changes. Those fees and Stanley's right to change other existing NCANA client accounts to avoid sharing revenue with Wilkie are the focus of the litigation. The Amended Complaint alleges that the partnership, joint venture, or contractual relationship arising from the agreement to share revenues received from this client base has not been and cannot be terminated unilaterally.

Stanley's affidavit focuses on the partnership claim and stresses that Stanley has clearly withdrawn from any ongoing partnership relationship with Wilkie. Stanley asserts that his election to proceed with an independent business was a clear termination of the partnership at will. Stanley further urges that because the NCANA clients may terminate their investment contracts at any time, claims related to revenues from these

accounts are speculative and cannot constitute partnership assets requiring dissolution procedures, and Wilkie has no injury in fact because of a loss of the speculative revenue.

### III. Legal Standard

{5}     As to the Rule 12(b)(1) motion, in order for the Court to have subject matter jurisdiction, the plaintiff must have standing to bring the claim. *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek an adjudication of the matter." *Woodring v. Swieter*, 180 N.C. App. 362, 366, 637 S.E.2d 269, 274 (2006) (internal quotations omitted). To satisfy the standing requirement, a plaintiff must demonstrate: "(1) injury in fact, or injury that is concrete and particularized, and actual or imminent; (2) causation between the challenged action of the defendant and the injury; and (3) the likelihood that the injury will be redressed by a favorable decision." *Lee Ray Bergman Real Estate Rentals v. N.C. Fair Hous. Ctr.*, 153 N.C. App. 176, 179, 568 S.E.2d 883, 886 (2002). The standard for a Rule 12(b)(6) motion is well settled and is stated in decisions of this Court. *See, e.g., Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005).

### IV.  Defendant's Motions to Dismiss For Lack of  Subject Matter Jurisdiction

{6}     Defendant's Rule 12(b)(1) motion rests on the injury prong of the standing requirement. Defendant cites a North Carolina case involving an at will employment contract, *Bloch v. Paul Revere Life Ins. Co.*, which states that an at will employee cannot recover damages beyond the lawful termination of the employment agreement. 143 N.C. App. 228, 238, 547 S.E.2d 51, 58−59 (2001). Defendant submits his own affidavit to support his view that the partnership has ended, so that there can be no recovery following the termination of a partnership at will. Defendant argues that the Court may consider his position regarding termination and the absence of any non-speculative partnership income because it may "consider and weigh matters outside the pleadings" for the purposes of determining whether the plaintiff has standing to sue. *Munger v. State*, ___, N.C. App. ___, 689 S.E.2d 230, 235 (2010).

It may be entirely true that any new client attracted by Stanley in his separate enterprise is outside the claims brought forward by the Amended Complaint. But as to revenue received from a client in place before Stanley began his new endeavor, there is clearly a dispute as to whether a partnership or other *de jure* relationship continues between the parties, so that Plaintiff is entitled to share in whatever revenue Defendant continues to receive as a result of clients jointly developed. If Plaintiff demonstrates any legitimate claim to revenue lost from a cognizable relationship, he has alleged injury in fact. Significantly, Plaintiff's claim of injury does not require that he prove that he and Defendant continue in a partnership or joint venture or have otherwise agreed to share expenses or revenues for new clients. But, as to clients already in place, Plaintiff's Amended Complaint states that the "partnership has not been dissolved and Stanley has never tried to dissolve the partnership or communicated to Wilkie any desire or intent to dissolve the partnership." (Am. Compl. ¶ 14.) Plaintiff alleges that he has lost approximately $2,000.00 in monthly income based on Defendant's actions and that it was "reasonable to expect" the clients who generated that income would remain clients of both Wilkie and Stanley for "many years to come." (Am. Compl. ¶¶ 15, 16.) While Wilkie acknowledges that clients can freely withdraw from any relationship with either Plaintiff or Defendant, he claims that so long as the client has a relationship with either, revenue from that relationship must be shared.

{7}     In *Mangum v. Raleigh Bd. of Adjustment*, the North Carolina Supreme Court stated that when considering a motion to dismiss for lack of standing, "we view the allegations as true and the supporting record in the light most favorable to the non-moving party." 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). The record must contain facts that if accepted as true would demonstrate the required injury in fact. In that sense, a Rule 12(b)(1) motion can operate similarly to a Rule 56 motion to require a plaintiff to supplement his pleadings if the complaint itself does not have adequate factual allegations, because the burden clearly rests on a plaintiff to present facts that support a cognizable injury. *See, e.g., Southstar Funding, L.L.C. v. Warren, Perry & Anthony, P.L.L.C,* 445 F.Supp. 2d 583, 584 (E.D.N.C. 2006) (discussing the federal equivalents of Rules 12(b)(1) and 12(b)(6)). But, the court should grant a "Rule 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to a

judgment as a matter of law." *Id.* (internal citations removed). Here, Plaintiff has included such facts in his Amended Complaint, but Defendant attempts by affidavit to supplement the record to demonstrate that such facts cannot be proven. The Court does not believe the controlling standard allows the Court to dismiss the claim for lack of standing because statements of material fact offered by Defendant's affidavit are in direct opposition to Wilkie's allegations. Cases relied on by Defendant do not teach otherwise. The North Carolina Court of Appeal's holding in *Dale v. Lattimore* is pertinent:

> Jurisdiction of the court over the subject matter is not defeated by the possibility that the allegations of the complaint may fail to state a cause of action upon which the plaintiff can recover.

> "For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. (Citations omitted.)" *Bell v. Hood*, 327 U.S. 678, 682, 90 L. Ed. 939, 943 (1946).

12 N.C. App. 348, 352, 183 S.E.2d 417, 420 (1971).

{8}    The challenge to jurisdiction based on an asserted lack of standing does not call upon the Court to adjudicate the case based on its merits. *See Cline v. Teich*, 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988). Plaintiff has alleged a "sufficiently concrete injury to justify the invocation of the judiciary's remedial powers." *Lee Ray Bergman Real Estate Rentals*, 153 N.C. App. at 178. Defendant's motion to dismiss under Rule 12(b)(1) is hereby DENIED.

## V. Defendant's Motion to Dismiss for Failure to State a Claim

{9}    Stanley argues that Wilkie cannot maintain his claims for a breach of partnership agreement, breach of joint venture agreement, breach of fiduciary duty, constructive trust, or accounting because a partner may dissolve an at will partnership for any reason, and he contends that the partnership was "terminated" after he left Compass at the end of 2008 and began his unilateral marketing efforts to NCANA members. (Mem. of Law in Supp.

of Def.'s Motions to Dismiss 8.)  As noted above, this assertion directly contradicts Plaintiff's allegation that the "partnership has not been dissolved and Stanley has never tried to dissolve the partnership or communicated to Wilkie any desire or intent to dissolve the partnership."  (Am. Compl. ¶ 14.)

The Court must accept at this stage that a partnership, joint venture or contract exists and that Defendant has failed to perform consistently with them.  Claims based on a violation of fiduciary duties attendant to such relationships survive, *see Compton v. Kirby*, 157 N.C. App. 1, 15−16, 577 S.E.2d 905, 914−15, as do claims for constructive trust,  *see  Cury v. Mitchell*, ___ N.C. App. ___, 688 S.E.2d 825, 828 (2010), and an accounting, *see* N.C. Gen. Stat. § 59-52.[2]

{10}    Finally, Defendant contests Plaintiff's claim for unfair and deceptive trade practices, challenging that Plaintiff's claims fall within North Carolina General Statutes Chapter 75 and asserting that the allegations of misrepresentation made on "information and belief" do not meet the standard that would demand actual facts to show cognizable injury.  "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Compton*, 157 N.C. App. at 19, 577 S.E.2d at 917.  Defendant urges that the dispute between these two parties cannot survive application of *White v. Thompson*, in which the Court utilized the "in or affecting commerce" element to dismiss the Chapter 75 claim, noting that the legislature designed the statute to regulate interactions between businesses and businesses and customers but did not intend for it to regulate purely internal business operations.  *See* 364 N.C. 47, 691 S.E.2d 676 (2010).

---

[2] Citing *Pugh v. Newbern*, 193 N.C. 258, 260, 136 S.E. 707, 708 (1927), Defendant argues that Plaintiff cannot seek an accounting "until after a complete settlement of the partnership's affairs, which Plaintiff argues has not occurred." (Reply Br. in Supp. of Jeremy L. Stanley's Motions to Dismiss 7.)  *Pugh* established a general rule that partners cannot seek an accounting while the partnership is in existence, but it also qualifies that general rule with numerous exceptions.  *See* 193 N.C. at 260, 136 S.E. at 708−09.  If partnership property is "removed entirely beyond the reach or control of the complaining party" or "when the joint property has been wrongfully destroyed or converted," then a plaintiff may bring an action for an accounting during the continuance of the partnership.  *Id.*  Because Plaintiff alleges that Defendant has collected the revenue from at least seventeen (17) of the joint clients and refuses to share half of that revenue with him, the income has been removed from his control.  Therefore, even under *Pugh*, a claim for an accounting is proper.

Here, Plaintiff's Amended Complaint includes allegations that Defendant made misrepresentations to NCANA clients about Mr. Wilkie that caused them to change their investment advisor. The Court at this stage accepts the allegations as true and believes these misrepresentations to clients, if proven, take the factual pattern outside the strictures of *White*. Rather, the fact pattern is more comparable to *Sara Lee Corp. v. Carter*, where the Supreme Court held that a Chapter 75 claim does lie. *See* 351 N.C. 27, 519 S.E.2d 308 (1999). Chapter 75 reaches intracorporate disputes where they impact other market participants. *See HAJMM Co. v. House of Raeford Farms, Inc.,* 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991).

{11}   Defendant claims, however, that the Court should not assume the misrepresentations to be true when the allegations as to those misrepresentations to consumers are stated solely on information and belief, grounding his argument on *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 617 S.E.2d 306 (2005). In *Coker*, when reviewing the grant of a Rule 12(c) dismissal, the Court of Appeals stated that it must determine "whether the moving party has shown that no material issue of fact exists upon the pleadings and that he is clearly entitled to judgment. All factual allegations in the nonmovant's pleadings are deemed admitted except those that are legally impossible or not admissible in evidence." 172 N.C. App. at 390, 617 S.E.2d at 309 (internal citations omitted). Defendant argues that the allegations on "information and belief" are not "admissible in evidence." The Court does not read the Court of Appeals as having held that allegations made on information and belief cannot support a claim attacked by a Rule 12(b)(6) motion made in advance of discovery.

For the reasons noted above, Defendant's motion to dismiss under Rule 12(b)(6) is hereby DENIED.

IT IS SO ORDERED, this 20th day of April, 2011.